COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Kelsey and Beales
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1122-06-2                      JUDGE ROBERT P. FRANK
                                                         OCTOBER 3, 2006
CARLOS FERNANDO WIMBISH


                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                             Gary A. Hicks, Judge

            Alice T. Armstrong, Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on briefs), for appellant.

            Jeffrey L. Everhart (Rice, Everhart & Baber, on brief), for appellee.


        The Commonwealth, appellant, appeals, pursuant to Code § 19.2-398, the trial court's

decision to grant Carlos Fernando Wimbish's motion to suppress his statements.  The trial court

ruled that the police failed to repeat the Miranda warnings after the initial interrogation ended and

after appellee was placed under formal arrest.  For the reasons stated, we find the trial court erred in

granting the motion to suppress.  We reverse and remand.

                                        BACKGROUND

        Appellee was taken to the Public Safety Building in Henrico County for questioning

concerning a "shooting."  Investigator Andrew Stromberg advised appellee he was not under arrest

but he was being detained.  At 7:12 a.m., Stromberg advised appellee of his rights under Miranda v.

Arizona, 384 U.S. 436 (1966).  Stromberg presented appellee with a Rights Waiver Form, and

appellee initialed each "right" on the form.  Appellee then signed the form acknowledging he

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

understood each of his "rights."[1]  The interview, including appellee's waiver of rights, was recorded on a DVD.

Approximately thirty minutes into the interview, Stromberg, believing that appellee was lying to him, became frustrated.  He stated, "We're not going to continue with this" and left the interview room.  As Stromberg left the room, appellee made some comment or response, but Stromberg testified he did not hear the statement at the time and did not know that appellee had said something to him until he subsequently reviewed the DVD recording of the interview.  The trial court reviewed the DVD and concluded that he could not understand what appellee had said.

After leaving the interview room, Stromberg met with Investigator Hanna, the lead investigator in the shooting.  Investigator Hanna had determined that appellee was going to be arrested in relation to the shooting; however, Stromberg testified that at that point he (Stromberg) was unaware of the specific charges to be brought against appellee.

Approximately ten minutes after leaving the interview room, Stromberg returned and told appellee he was now under arrest.  Neither Stromberg nor Hanna repeated the <u>Miranda</u> warnings at that point, and Stromberg did not specifically advise appellee of the charges.  Stromberg then resumed the interview.  Appellee ultimately made inculpatory statements regarding the shooting.

The trial court granted appellee's motion to suppress his statements made to Stromberg. The court found that Stromberg terminated the interview and the interrogation ended.  The trial court further found that when Stromberg returned and advised appellee that he was now under arrest, these changes in circumstances mandated a renewal of appellee's <u>Miranda</u> rights.

This appeal follows.

---

[1] Appellant does not contest the validity of the initial <u>Miranda</u> warnings.

ANALYSIS

On appeal, the Commonwealth contends the trial court erred in ruling the Commonwealth was required to repeat the Miranda warnings before resuming the interrogation.

When this Court reviews a trial court's ruling on a motion to suppress, "'the burden is upon the [losing party] to show that the ruling, when the evidence is considered most favorably to the [prevailing party], constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

In order for a confession to be admissible, the Commonwealth bears the burden of proving the defendant voluntarily made a knowing and intelligent waiver of his constitutional privilege against self-incrimination and his right to counsel. Miranda, 384 U.S. at 475. Therefore, the Commonwealth first must show that the police complied with the necessary procedural safeguards by advising the defendant of his Miranda rights. See Blain v. Commonwealth, 7 Va. App. 10, 13, 371 S.E.2d 838, 840 (1988) ("Failure to give Miranda warnings prior to custodial interrogation requires suppression of any illegally obtained statements.").

> The Miranda warnings protect a suspect's constitutional privilege by "ensuring that a suspect knows that he may choose not to talk to law enforcement officials, to talk only with counsel present, or to discontinue talking at any time. The Miranda warnings ensure that a waiver of these rights is knowing and intelligent by requiring that the suspect be fully advised of this constitutional privilege, including the critical advice that whatever he chooses to say may be used as evidence against him." Colorado v. Spring, 479 U.S. 564, 574 (1987). Furthermore, "[t]he purposes of the safeguards prescribed by Miranda are to ensure that the police do not coerce or trick captive suspects into confessing . . . and as much as possible to free courts from the task of scrutinizing individual cases to try to determine, after the fact, whether

particular confessions were voluntary." May v. Commonwealth, 3
Va. App. 348, 354-55, 349 S.E.2d 428, 431 (1986).

Shell v. Commonwealth, 11 Va. App. 247, 252, 397 S.E.2d 673, 675-76 (1990).

The Supreme Court of the United States, in Missouri v. Seibert, 542 U.S. 600 (2004), stated:

> In Miranda, we explained that the "voluntariness doctrine
> in the state cases . . . encompasses all interrogation practices which
> are likely to exert such pressure upon an individual as to disable
> him from making a free and rational choice[.]" [Miranda, 384 U.S.
> at 464-65]. We appreciated the difficulty of judicial enquiry *post
> hoc* into the circumstances of a police interrogation, [Dickerson v.
> United States, 530 U.S. 428, 444 (2000)], and recognized that "the
> coercion inherent in custodial interrogation blurs the line between
> voluntary and involuntary statements, and thus heightens the risk"
> that the privilege against self-incrimination will not be observed[.]
> [Id. at 435]. Hence our concern that the "traditional totality-of-the
> circumstances" test posed an "unacceptably great" risk that
> involuntary custodial confessions would escape detection. [Id. at
> 442].
>
> Accordingly, "to reduce the risk of a coerced confession
> and to implement the Self-Incrimination Clause," [Chavez v.
> Martinez, 538 U.S. 760, 790 (2003) ( Kennedy, J., concurring in
> part and dissenting in part)], this Court in Miranda concluded that
> "the accused must be adequately and effectively apprised of his
> rights and the exercise of those rights must be fully honored."
> [Miranda, 384 U.S. at 467]. Miranda conditioned the admissibility
> at trial of any *custodial confession* on warning a suspect of his
> rights: failure to give the prescribed warnings and obtain a waiver
> of rights before custodial questioning generally requires exclusion
> of any statements obtained.

Id. at 608.

Here, it is uncontroverted that appellee was properly advised of his Miranda rights. The

issue before us is whether the Commonwealth was required to repeat the warnings when the

interrogation resumed.

We start with the premise that "where a person, after receiving Miranda warnings, has

once given a knowing and intelligent waiver of his constitutional rights, such waiver will be

presumed to continue in effect throughout subsequent custodial interrogations until the suspect manifests, in some way which would be apparent to a reasonable person, his desire to revoke it." Washington v. Commonwealth, 228 Va. 535, 548-49, 323 S.E.2d 577, 586 (1984).

Appellee contends on brief that he revoked his decision to speak to the police by responding to Stromberg's statement, "We're not going to continue with this," by stating, "No, we're not going to continue this." However, during oral argument appellee conceded that this issue is not before this Court since it was not part of the trial court's ruling. We agree.

The trial court seemed to conclude that since Stromberg, rather than appellee, terminated the interrogation, any new interrogation must be accompanied by a new Miranda warning. Appellee conceded at oral argument that he could point to no authority to support this argument. Clearly, the police cannot revoke appellee's intent to speak to the police. Cf. Miranda, 384 U.S. at 473 ("If the *individual* indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease . . . ." (emphasis added)). Stromberg's termination of the interrogation for a period of approximately ten minutes does not, in itself, impact the presumption that the waiver continues.

The other basis of the trial court's granting the motion to suppress was a "change in circumstance." The trial court held, and appellee argues herein, that when the investigative detention changed to a formal arrest, the police were obligated to again give appellee Miranda warnings. Again, we disagree. "Whether a suspect is 'in custody' under Miranda is determined by the circumstances of each case, and 'the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.'" Harris v. Commonwealth, 27 Va. App. 554, 564, 500 S.E.2d 257, 262 (1998) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)). For Miranda purposes, a formal arrest is no different than "restraint on freedom of movement of the degree associated with formal arrest." The safeguards

guaranteed by <u>Miranda</u> apply equally to both categories of "custodial interrogation." To the extent that appellee was subject first to investigative detention and then to a formal arrest, this change in circumstance has no <u>Miranda</u> consequence requiring a re-advisement of the <u>Miranda</u> warnings.

Appellee relies on <u>Michigan v. Mosley</u>, 423 U.S. 96 (1975), to support his argument that appellee experienced a change in circumstances requiring renewal of his <u>Miranda</u> warnings. We find appellee's reliance on <u>Mosley</u> misplaced. In <u>Mosley</u>, the Supreme Court addressed the admissibility of Mosley's confession after he invoked his right to silence and was subsequently questioned by a different police officer about a different crime. <u>Id.</u> at 98. The Court's analysis focused on whether the police "scrupulously honored" Mosley's right to terminate questioning. <u>Id.</u> at 104. As previously discussed, the issue of appellee's revocation is not before this Court. Thus, the holding in <u>Mosley</u> does not apply to the facts of this case.

We conclude the trial court erred in granting the motion to suppress. We reverse and remand for further proceedings.

<u>Reversed and remanded.</u>